[Civ. No. 68112. Second Dist., Div. Three. Mar. 5, 1984.]

ROBERT WIESER, Plaintiff and Appellant, v.
BOARD OF RETIREMENT OF THE LOS ANGELES COUNTY
EMPLOYEES RETIREMENT ASSOCIATION,
Defendant and Respondent.

**COUNSEL**

Lemaire, Faunce & Katznelson and Mark Ellis Singer for Plaintiff and Appellant.

John H. Larson, County Counsel, Donald K. Byrne, Chief Deputy County Counsel, and Rafael A. Ongkeko, Deputy County Counsel, for Defendant and Respondent.

**OPINION**

**LUI, J.**—Appellant Robert Wieser appeals from the judgment of the superior court denying his petition seeking the issuance of a peremptory writ of mandate compelling the respondent Board of Retirement of the County of Los Angeles Employees Retirement Association (Board) to grant him a service-connected disability allowance. For the reasons indicated below, we reject appellant's contentions on appeal and affirm the judgment entered below.

### FACTUAL BACKGROUND AND PROCEEDINGS BELOW

Appellant was employed by the County of Los Angeles as a firefighter from September of 1952, until January 1978.

Appellant applied for a service-connected disability allowance from the Board pursuant to Government Code section 31720.[1] By a letter dated January 8, 1980, the Board notified appellant through his counsel that his "application for disability retirement as a Safety Member because of a service-connected disability, was presented to the Board of Retirement at its meeting on *January 2, 1980,* and an order was made, finding that he is disabled but that his disability is not service-connected. [¶] He was, however, retired from service, under an unmodified nonservice-connected disability retirement allowance, effective *June 10, 1979.* [¶] If he wishes to appeal this decision, he has 30 days from the receipt of this letter to do so. Enclosed is a copy of our Hearing Procedures." (Italics in original.)

The hearing procedures mentioned in the Board's letter to respondent state as follows: "PROCEDURES FOR DISABILITY RETIREMENT HEARINGS [¶] 1. When a request for a hearing is received by the Board . . . the matter shall be referred for hearing *de novo* before a Board-appointed referee." (Italics added.)

On the same date as the letter, appellant's counsel wrote the secretary of the Board as follows: "We represent . . . [appellant] in his request for a disability retirement, and request that the issue of whether the applicant should be granted a service-connected disability retirement allowance be referred for a hearing by a Referee of the Board of Retirement."

The requested hearing commenced on June 24, 1980. During the initial phase of the hearing, the subject of the scope of the hearing was discussed between the referee and counsel for appellant and the Board. Although the referee indicated that he did not feel that the Board was correct in its interpretation of the scope of a de novo hearing, it was evident that the referee, and both counsel for the parties, were aware that the hearing would be conducted on the basis of determining whether appellant was permanently disabled and not merely whether his disability was service-connected.[2]

---

[1]Appellant's application for a disability retirement was governed by the County Employees' Retirement Law of 1937, as amended, Government Code section 31450 et seq. Government Code section 31720 provides for disability retirement in the event of permanent incapacity.

Hereinafter, all references shall be to the Government Code unless otherwise indicated.

[2]The reporter's transcript of the Board's hearing conducted by Referee Edward H. Gaylord in this regard reflects the following: "MR. WICKE [Appellant's counsel]: Well, relating to materiality, certainly if the issue that we have, being disability in the applicant's medical condition, evidence relating to that certainly would be material, would it not? And certainly—

"THE REFEREE [Gaylord]: Let's see if there is anything in here.

"MR. WICKE: I can understand the reference of not knowing the terms in the report. I think that is one thing. But I think the admissibility issue goes to whether it is relevant. And

Subsequent to the hearing, the referee issued a proposed findings of fact and proposed decision. Finding No. III states: "The applicant was not and has not been incapacitated for the performance of his duties." The referee thereupon recommended that the "application for disability retirement either service-connected or nonservice-connected be denied."

On July 22, 1980, Referee Gaylord wrote the secretary of the Board, stating: "I have received and carefully considered a copy of the [appellant's] Objections to the . . . Proposed Finding of Fact and Proposed Decision . . . . [¶] I agree with the [appellant's] first objection . . . that the hearing officer should not determine whether the applicant is permanently incapacitated where the Board has decided that he is. Prior to the Board's Memorandum . . . I had refused to make such a determination. However upon receipt of a memorandum from the Board to the contrary, . . . I felt that I could not ignore the Board's decision even though I disagreed with the conclusion. I agree with the [appellant] when he says . . . and with Mr. Faunce [appellant's counsel] when he says . . . quoting from the latter: [¶] '. . . The term de novo describes that nature of the hearing granted, but not the scope of the hearing. . . .' [¶] As to the [appellant's] second objection at pages 9 et seq. of his Objections, although, as I said at page 12 line 9-10 of the Summary of Evidence: [¶] '. . . In this case I believe the evidence is sufficient to sustain a finding of permanent incapacity. . . .' [¶] I still believe the *weight* of the evidence is to the contrary. The applicant does not discuss the extensive detailed discussion by Dr. Gwartz quoted at pages 20-21 of the Summary of Evidence, or why he asked for a transfer on the day before his last day at work, as noted at page 18, lines 17-25 of the Summary of the Evidence if he was incapacitated for duty." (Italics in original.)

---

I think—

"MR. MILLER [Board's counsel]: May I just—

"THE REFEREE: In what way does it go to prove that it is service-connected?

"MR. WICKE: Well, counsel and I have talked about the issues that we have before us today, and *we also will be discussing the issue of disability, even though I know the hearing officer's feelings on that. There must be evidence presented on that, and that is why it is being offered.*

"THE REFEREE: *My feelings are this: that I have a memorandum from the Board of Retirement that even though the Board of Retirement finds him disabled we still have to decide that all over again. I do not agree with the Board of Retirement, but I am only the referee, not the Board.*

"MR. WICKE: *I agree with you.*

"THE REFEREE: *I think the only thing he appealed from was the finding that it was not service-connected. He did not appeal from the finding that he was disabled. I think the Board of Retirement takes a wrong definition of the term 'de novo.'*

"MR. WICKE: We have not reached agreement on the issues today so unfortunately, without a stipulation, it still would be de novo, at least in the Board's eyes. *And that is why we would have to submit evidence on the issue of disability to persuade you.*

"THE REFEREE: I think Mr. Miller's own exhibit testifies that he is permanently disabled.

"MR. WICKE: Yes. One of his exhibits does. Yes." (Italics added.)

On October 1, 1980, the Board considered the referee's summary of evidence, suggested findings of fact, and suggested conclusions of law regarding appellant's application for disability retirement. The Board accepted the report and adopted the finding of the referee that appellant was not disabled and denied appellant a disability retirement allowance. Appellant was notified through his counsel of the Board's October 1, 1980, decision by a letter dated November 12, 1980.

Subsequently, appellant filed a petition for writ of mandate in the superior court contending that the Board's finding that he was not permanently incapacitated for the performance of his job duties was a prejudicial abuse of discretion and that the Board did not proceed as required by law. The petition for writ of mandate contended that the Board could not as a matter of law instruct its referee to reconsider its prior position in granting a nonservice-connected disability retirement. Appellant also contended that respondent's finding that appellant was not permanently incapacitated was not supported by the weight of the evidence.

The petition for writ of mandate was heard by the trial court on September 28, 1981. Following a hearing on the petition, the court denied appellant's petition. Subsequently, findings of fact and conclusions of law were issued and a judgment denying appellant's peremptory writ of mandate was entered. Appellant filed a timely notice of appeal.

### APPELLANT'S CONTENTIONS ON APPEAL

1. The scope of the de novo hearing was limited to the question of whether appellant's disability was service-connected because the Board had already granted appellant a nonservice-connected disability retirement allowance.

2. The trial court's determination that appellant was not permanently incapacitated is not supported by substantial evidence.

### DISCUSSION

### I

*The Question of Appellant's Permanent Disability*
*Was a Proper Subject of the Hearing Conducted*
*by the Board Appointed Referee*

A. *No Violation of Appellant's Due Process Rights to a Fair Hearing*

Appellant claims that he was denied due process and a fair hearing because the Board improperly instructed the referee to determine the ques-

tion of appellant's incapacity in spite of the fact that it previously granted him a nonservice-connected disability pension. We disagree.

The Board's procedures for disability retirement hearings specify that when a hearing is requested by an applicant, it shall be referred for a hearing "de novo before a Board-appointed referee." In *REA Enterprises* v. *California Coastal Zone Conservation Com.* (1975) 52 Cal.App.3d 596, 612 [125 Cal.Rptr. 201], Division Five of this district had occasion to address the interpretation of the term "de novo." The court stated: "The leading case in California on this point is *Buchwald* v. *Katz,* 8 Cal.3d 493 [105 Cal.Rptr. 368, 503 P.2d 1376]. In *Buchwald,* the Supreme Court affirmed its earlier decision of *Collier & Wallis, Ltd.* v. *Astor,* 9 Cal.2d 202 [70 P.2d 171], where it had construed the language of section 19 of the Private Employment Agency Law (later codified in Lab. Code, § 1700.44). [Fn. omitted.] ■ In the *Collier & Wallis* case, the court discussed the term 'de novo' as follows (at p. 205): 'A hearing *de novo* literally means a new hearing, or a hearing the second time. (18 Cor. Jur. 486.) Such a hearing contemplates an entire trial of the controversial matter in the same manner in which the same was originally heard. It is in no sense a review of the hearing previously held, but is a complete trial of the controversy, the same as if no previous hearing had ever been held. It differs, therefore, from an ordinary appeal from an inferior to an appellate body where the proceedings of the hearing in the inferior court are reviewed and their validity determined by the reviewing court. A hearing *de novo* therefore is nothing more nor less than a trial of the controverted matter by the court in which it is held. The decision therein is binding upon the parties thereto and takes the place of and completely nullifies the former determination of the matter. . . . [T]he section simply gives to the party dissatisfied with the determination of the labor commissioner a hearing of the matter . . . before the superior court. The court hears the matter, not as an appellate court, but as a court of original jurisdiction, with full power to hear and determine it as if it had never been before the labor commissioner. The act does not, therefore, in fact or in law confer appellate jurisdiction upon the superior court, but does provide a legal forum where either party to the controversy, in case he is dissatisfied with the determination of the labor commissioner, may have his rights adjudicated.' "

■ *REA, supra,* 52 Cal.App.3d 596, dealt with the question of the scope of a hearing de novo by a state commission after a hearing by a regional commission. However, we believe the *REA* analysis to be equally applicable to the situation at hand, where the de novo hearing was conducted by the same tribunal (albeit after a referee had conducted a detailed hearing on the issues), especially since the initial award of disability was made without the benefit of a hearing.

As stated in *People* v. *Bourdon* (1970) 10 Cal.App.3d 878, 881 [89 Cal.Rptr. 415]: "The very concept, '*de novo*' hearing, means that all matters therein in issue are to be considered 'anew; afresh; over again,' [fn. omitted] and it encompasses the admissibility of the evidence sought to be adduced, even though *that* determination is one of law and to be made by the judge and not the jury."

Thus, the Board's interpretation of its own rules allowing for a fresh determination of appellant's disability was consistent with appellate decisions.

Finally, we see no unfairness or surprise to appellant that the Board sought to raise the question of his disability during the hearing. There is evidence in the record that appellant's counsel Edward Faunce was aware of the fact that the county counsel's office had made prior attempts to argue the point that all issues were before a hearing officer, including the question of disability even though the Board had previously granted a nonservice-connected disability pension. Furthermore, as indicated in footnote 2, *ante*, at pages 778 and 779, appellant's counsel was advised by Referee Gaylord that he was going to follow the Board's instructions to determine disability in spite of his own views on the subject. There simply was no element of surprise or unfairness to appellant.

B. *The Board's Decision to Review the Question of Appellant's Disability After a De Novo Hearing Did Not Violate the Provisions of the County Employees' Retirement Law*

Appellant contends that the Board was not in a position to reverse its determination on the question of his disability as set forth in the Board's letter of January 8, 1980. Appellant cites us to section 31729 which provides that: "The board may require any disability beneficiary under age 55 to undergo medical examination. The examination shall be made by a physician or surgeon appointed by the board at the place of residence of the beneficiary or other place mutually agreed upon. Upon the basis of the examination the board shall determine whether the disability beneficiary is still physically or mentally incapacitated for service in the office or department of the county or district where he was employed and in the position held by him when retired for disability."

Appellant also cites us to section 31730 which provides for reinstatement in county service if the employee is deemed not incapacitated. We reject appellant's contention that the Board violated these provisions of the Government Code.

■ Appellant's situation was not one in which there was a final grant of a disability pension and then a decision of the Board to review appellant's condition without a section 31729 medical examination. Rather, appellant's initial grant of a nonservice-connected disability by the Board's letter of January 8, 1980, was subject to an appeal initiated only by appellant and would have become final 30 days after this date had appellant not requested a hearing. However, by requesting a hearing, the decision as to appellant's disability pension was still open. Had the decision become final without a request for a hearing by appellant, then the Board would have been compelled to proceed by way of a medical examination pursuant to section 31729 if it wished to question appellant's continued disability. Absent a final determination by the Board on appellant's application, it was not required to proceed pursuant to section 31729.

II

*Substantial Evidence Supports the Trial Court's*
*Decision That Appellant Was Not Disabled*

■ Appellant contends that the trial court's decision that he was not permanently disabled is not supported by substantial evidence. He points out that only Dr. Gwartz found him not disabled despite the opinion of various other doctors to the contrary.

■ The trial court determines the truth of the fact in dispute based on the record before it and not merely the sheer volume of evidence presented. Appellant's argument that there was no substantial evidence is without merit. As stated in *Smith* v. *Workmen's Comp. App. Bd.* (1969) 71 Cal.2d 588, 592 [78 Cal.Rptr. 718, 455 P.2d 822], "[w]e recognize at the outset these two well-settled principles: (1) factual determinations of the board must be upheld if there is substantial evidence in their support and the relevant and considered opinion of one physician, though inconsistent with other medical opinions, may constitute substantial evidence [citations]; . . ."

After the trial court has exercised its independent judgment in weighing the evidence, our task is to review the record to determine whether the trial court's findings are supported by substantial evidence. (See *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143, fn. 10 [93 Cal.Rptr. 234, 481 P.2d 242].) The trial court's decision should be sustained if it is supported by credible and competent evidence. (*Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 71 [64 Cal.Rptr. 785, 435 P.2d 553].) Further, "[t]he trier of fact may accept the evidence of any one expert . . . ." (*Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.* (1948) 33 Cal.2d 89, 94 [199 P.2d 302].)

Dr. Gwartz was an internist as well as a psychiatrist. He examined appellant about four months after he stopped working. The medical report submitted by him is lengthy and detailed. It sets out appellant's case history, physical, neurological, psychiatric and laboratory findings, current medications, a review of medical records, diagnoses, recommendations, and the results of a treadmill stress test which he administered to appellant. The underlying medical examination was thorough. Dr. Gwartz found no clinical, diagnosable or physical manifestations of appellant's numerous objective complaints. Further, in spite of the lack of medication, appellant's blood pressure levels were normal and remained at normal levels during a cardiovascular treadmill stress test; the test revealed no cardiovascular abnormalities.

For over 10 years, appellant had also complained of recurrent diarrhea as well as abdominal cramps. However, on reviewing his medical records, Dr. Gwartz found that all the upper gastrointestinal studies were within normal limits. He further observed that even appellant's physical symptoms were evidently not severe enough to interfere with his work. Appellant's numerous evaluation reports for the period in question reflected satisfactory to excellent work performance.

Despite appellant's subjective complaints of recurrent situational anxiety, Dr. Gwartz was unable to find any objective evidence of such condition interfering with appellant's work.

Apart from the medical testimony, the record indicates that on January 12, 1978, two days before he stopped working, appellant applied for a transfer. The referee felt that this was indicative of an intent "to go back to work if he [appellant] was not retired."

Based upon our examination of the record, we find that substantial evidence supports the trial court's finding that appellant was not permanently disabled.

For the reasons indicated above, the judgment is affirmed.

Klein, P. J., and Danielson, J., concurred.