[No. F064017. Fifth Dist. Feb. 20, 2013.]

THOMAS ALBERDA, Plaintiff and Appellant, v.
BOARD OF RETIREMENT OF FRESNO COUNTY EMPLOYEES'
RETIREMENT ASSOCIATION, Defendant and Respondent.

COUNSEL

Thomas J. Tusan for Plaintiff and Appellant.

Kevin B. Briggs, County Counsel, and Michael R. Linden, Deputy County Counsel, for Defendant and Respondent.

OPINION

**GOMES, J.**—The Board of Retirement of Fresno County Employees' Retirement Association (Board) denied Thomas Alberda's application for a service-connected disability retirement. Alberda filed a petition for a writ of mandate to set aside the Board's determination, which the trial court denied. On appeal, Alberda claims the trial court applied an incorrect standard of review: Instead of undertaking an independent determination of whether Alberda's disability was service connected, the trial court denied the petition after concluding substantial evidence supported the hearing officer's finding on that issue. We agree with Alberda, reverse the order denying the petition, and remand the case to the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

Alberda began work as a full-time Fresno County deputy sheriff in 1993. Before his employment, Alberda had two surgeries on his right knee: The first, in 1981, was to repair damage he sustained when he dislocated his right knee while playing high school basketball; the second, in 1984, was to remove a chip in the right knee which occurred while playing basketball. The knee did not require ongoing treatment; Alberda passed his Fresno County preemployment physical as well as the physical requirements of the law enforcement academy.

In May 1995, Alberda hyperextended his right leg while on duty, causing an internal derangement that required surgery, which Malcolm E. Ghazal, M.D., performed that month. Before the surgery, Dr. Ghazal advised Alberda that while the surgery would relieve his immediate symptoms, he had underlying arthritis in his knee which would continue to worsen with time and eventually could require a significant surgical procedure. Dr. Ghazal, however, hoped such a surgery could be deferred for "many years to come." In August 1995, Alberda returned to full duty without restriction.

Sometime in 2003, Alberda, who is six feet seven inches tall, was assigned a smaller patrol vehicle in which he did not comfortably fit; while he could work, his knees were crammed into the dashboard. After about a year, he began

having severe problems with both knees and was in continual pain. He stopped working in June 2005 due to the pain in his knees and sought treatment from Marc Johnson, M.D. Orthopedic surgeon Ronald R. Castonguay, M.D., performed surgeries to repair meniscus tears on both of Alberda's knees: the first, on September 16, 2005, was on his right knee, and the second, on October 28, 2005, was on his left knee. Alberda did not recall any specific injury to his left knee during his career, although he recalled an instance in 2001 in which he went to the hospital after he had "gone down hard" on the left knee while arresting a suspect. He thought a report of the incident had been prepared, but one was never located.

In March 2007, Alberda filed an application for a service-connected disability retirement. On April 4, 2008, the Board denied the application and instead approved the grant of a non-service-connected disability retirement if Alberda wished to apply for one. Alberda submitted a request for a hearing on the Board's decision, which was held on March 8, 2010. The evidence consisted of testimony by Alberda, Alberda's expert, Hiram B. Morgan, Jr., M.D., and an expert who performed an independent medical examination of Alberda for the Fresno County Employees' Retirement Association (Association), Andrew Thomas Brooks, M.D., as well as medical reports and other documents.

Drs. Brooks and Morgan agreed that due to the problems in both knees, Alberda was not capable of performing the essential job duties of a deputy sheriff and his condition was permanent. They differed, however, on their opinions regarding the cause of Alberda's knee problems.

Dr. Morgan, a board-certified orthopedic surgeon who also performed independent medical evaluations, examined Alberda on November 4, 2009, and prepared a report. In his report, Dr. Morgan opined that, during the course of Alberda's 14-year employment as a deputy sheriff, he had a gradually evolving bilateral degenerative joint disease of the knees, "superimposed" upon a history of a "benign injury to the right knee in 1981" and a "minimal arthroscopic surgical procedure in 1985 to retrieve a loose body," for which records were not available. Dr. Morgan believed Alberda's duties as a deputy sheriff resulted in ongoing degenerative change bilaterally, including to the previously uninjured left knee. He also believed the "[n]early two months of constant repetitive daily patellofemoral compression phenomenon," and the possibility Alberda harbored a genetic "short straw" with respect to both knees, contributed to the situation.

Dr. Morgan testified at the hearing that before Alberda's employment as a deputy sheriff, he had no known preexisting significant disease in the left knee, no known obviously significant advancing, degenerative disease in the

right knee, and no history of ongoing inflammatory disease, significant symptoms or knee impairment. While Dr. Morgan recognized that Alberda's age, size and possible genetic predisposition contributed to his knee problems, Alberda's degenerative disease problems were more advanced than one would expect. Dr. Morgan opined a number of factors caused Alberda's knee problems, including the 1995 on-the-job knee injury, the pressure from the patrol vehicle's instrument panel, the "biological imperative of aging," and general living and working. He did not attribute the 1981 knee injury as a cause of Alberda's later knee problems, since the original injury did not involve a weight-bearing joint surface and instead involved an unstable patella.

Dr. Morgan attributed 70 percent of Alberda's right knee condition to the May 1995 injury, and 30 to 45 percent of his left knee condition to his working conditions. The rest of the problems to the right knee were attributable to "life," including other things that happened during the course of Alberda's employment with the sheriff's office. He did not think that Alberda necessarily was suffering from degenerative disease when Dr. Ghazal treated Alberda in 1995, noting that the arthroscopy performed after Dr. Ghazal's statement showed only recent trauma to the knee, and he believed Alberda's knees were fine before the 1995 injury. According to Dr. Morgan, degenerative joint disease usually is not disabling in itself and requires trauma to the joint to become a problem. Dr. Morgan testified that a meniscus tear is caused by either traumatic injury or degenerative disease, and admitted he was unaware of any trauma to the left knee. Dr. Morgan opined the injury to the left knee occurred as a result of it being used differently during times when the right knee was injured, as well as constant stress on it from the instrument panel. He believed the right knee injury alone prevented Alberda from working as a sheriff.

Dr. Brooks, an orthopedist specializing in hips and knees, examined Alberda in 2007. In his written report, Dr. Brooks opined that Alberda's incapacity did not arise out of his employment, as the degenerative changes found in his right knee at the time of his 1995 arthroscopy predated his employment and would have worsened gradually. While he believed the 1995 injury to the right knee may have aggravated the preexisting conditions, there was no doubt in his mind the arthritis would progress to the point where Alberda would be unable to continue working, either with or without injury. Although sitting in a patrol car with knees flexed would create increased pain, it did not substantially change the course of the disease. Dr. Brooks also noted the lack of evidence of injury, or of a significant injury, to the left knee that would cause a medial meniscus tear. Dr. Brooks believed Alberda's chronic obesity played a significantly larger role in the development of the degenerative changes in both knees.

At the hearing, Dr. Brooks opined the cause of Alberda's disability was arthritis in both knees. Based on what Alberda told him about the 1981 surgery, he believed the procedure was "very significant." As for the 1984 surgery, Dr. Brooks believed the injury was caused by either arthritis or trauma, and although he did not have the operative report, he thought the surgery was to correct a significant problem that was very common in people with arthritis or "big traumas." With respect to the 1995 injury, Dr. Brooks testified the damage to the right knee was caused by a combination of the 1995 on-the-job incident and the arthritis that was already present in that knee. Dr. Brooks thought that while it would hurt Alberda to have his knees pressed against the dash of the patrol vehicle, it was unlikely that caused any actual, significant knee damage. The meniscus tears Alberda experienced in 2005 were the result of the natural progression and history of his arthritis. Dr. Brooks thought the argument that the left knee could become more symptomatic while recovering from right knee surgery was "ludicrous," as he never felt that was a cause for legitimate knee problems, and agreed it was possible the left knee would become more painful if the person had preexisting arthritis.

In Dr. Brooks's opinion, Alberda would have been in the same position even had he not been a deputy sheriff, as the damage to his knees would have progressed just through the activities of daily living. This was why Dr. Brooks believed the left knee was arthritic despite the absence of damage or trauma to it. Dr. Brooks also thought Alberda had a genetic predisposition to becoming arthritic, although he admitted there was no test to confirm that. Dr. Brooks did not think Alberda would have been able to sit in the patrol car for more than a few minutes if the pressure from the dash on the knee was sufficient enough to cause arthritis. It was hard for him to say how much the 1995 incident contributed to Alberda's injury because Alberda did not have a meniscus tear and the description of the inside of the knee was one of arthritis, but he did not think it was a significant factor based on the appearance of the knees at the time of surgery.

After hearing oral argument and taking the matter under submission, the hearing officer issued a proposed recommended decision on April 3, 2010, in which he found that Alberda's permanent incapacity was not the result of injury or disease arising out of and in the course of his employment, and that his employment did not contribute substantially to his disability. The hearing officer noted that while both doctors agreed that all of the factors involved, both work and nonwork, contributed to Alberda's disability, they disagreed regarding the proportional assignment. The hearing officer found as follows: "Dr. Morgan who testified on behalf of [Alberda] comes across as being reasonable, fair, and objective in his analysis of the factors involved while Dr. Brooks communicates a very bias[ed], intolerant perspective in his testimony. The opinions of one or the other of these two experts must be

accepted and it is concluded that even though Dr. Morgan displays a more reasonable perspective it is very difficult to conclude that the ten year old 1995 injury to [Alberda]'s right knee, from which he fully recovered, was the primary cause of his 2005 disability even though presumably aggravated by his 2003 assignment to a small vehicle. [Alberda] had a lot of degenerative problems and it is reluctantly concluded that it is those problems and not the 1995 trauma and the 2003 assignment that led to his 2005 incapacity. The preponderance of the evidence does not establish that [Alberda]'s employment contributed substantially to his permanent incapacity. The causal connection between the job and the disability must be real and measurable and substantial and such is not found to be the case herein." The hearing officer recommended Alberda's application for service-connected disability retirement be denied. On June 16, 2010, the Board adopted the hearing officer's findings of fact and recommendations.

Alberda filed a writ petition in superior court on August 24, 2010. The trial court heard the petition on July 12, 2011, and took the matter under submission. On September 26, 2011, it issued its statement of decision denying the petition. The decision began with stating the standard of review was independent judgment, in which the trial court must afford a strong presumption of correctness concerning the administrative findings and the party challenging the administrative decision bears the burden of convincing the court the findings are contrary to the weight of the evidence. After addressing a procedural issue not raised on appeal, the trial court addressed the substantive merits. It noted that the issue was whether there was " 'substantial evidence of some connection between the disability and the job,' " and found that, "[i]n this case, substantial evidence supports the hearing officer's decision that [Alberda] was not entitled to service-connected disability retirement benefits." The court then listed the evidence it asserted showed "substantial evidence supported the 1995 injury to the right knee did not contribute substantially to [Alberda]'s incapacity." The court further found "substantial evidence supports that the 2003 assignment to a smaller squad car did not contribute substantially to [Alberda]'s incapacity," and cited that evidence.

Finally, the trial court noted that Drs. Morgan and Brooks disagreed on the cause of Alberda's disability. The trial court stated: "Despite taking some issue with the testimony of Dr. Brooks, the hearing officer found, 'Applicant had a lot of degenerative problems and it is reluctantly concluded that it is those problems and not the 1995 trauma and the 2003 assignment that led to his 2005 incapacity.' (Admin. Record, p. 000148.) [¶] As stated in *Smith v. Workmen's Comp. App. Bd.* (1969) 71 Cal.2d 588, 592 [78 Cal.Rptr. 718, 455 P.2d 822], '[we] recognize at the outset these two well-settled principles: (1) factual determinations of the board must be upheld if there is substantial evidence in their support and the relevant and considered opinion of one

physician, though inconsistent with other medical opinions, may constitute substantial evidence [citations]; . . .' [¶] (*Wieser v. Bd. of Ret.* (1984) 152 Cal.App.3d 775, 783 [199 Cal.Rptr. 720]; *see Glover v. Board of Retirement* (1989) 214 Cal.App.3d 1327, 1338 [263 Cal.Rptr. 224].) Substantial evidence supports the hearing officer's finding."

## DISCUSSION

Where, as here, a trial court reviews a final administrative decision that substantially impacts a fundamental vested right, the trial court both examines the administrative record for errors of law and exercises its independent judgment upon the evidence. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 816, fn. 8 [85 Cal.Rptr.2d 696, 977 P.2d 693] (*Fukuda*); *Bixby v. Pierno* (1971) 4 Cal.3d 130, 143 [93 Cal.Rptr. 234, 481 P.2d 242] (*Bixby*); *Levingston v. Retirement Board* (1995) 38 Cal.App.4th 996, 1000 [45 Cal.Rptr.2d 386] (*Levingston*).) In carrying out this independent review, however, the trial court must afford the agency's decision a strong presumption of correctness and must impose upon the petitioner the burden of showing that the agency's findings are contrary to the weight of the evidence, i.e., the decision was not supported by the preponderance of the evidence. (*Fukuda, supra,* 20 Cal.4th at pp. 808, 817, 819–822; *Breslin v. City and County of San Francisco* (2007) 146 Cal.App.4th 1064, 1077 [55 Cal.Rptr.3d 14] (*Breslin*).) An abuse of discretion is established if the trial court determines that the findings are not supported by the weight of the evidence. (*Fukuda, supra,* at p. 811.)

"Because the trial court ultimately must exercise its own independent judgment, that court is free to substitute its own findings after first giving due respect to the agency's findings." (*Fukuda, supra,* 20 Cal.4th at p. 818; see *Barber v. Long Beach Civil Service Com.* (1996) 45 Cal.App.4th 652, 658 [53 Cal.Rptr.2d 4] (*Barber*); *Levingston, supra,* 38 Cal.App.4th at p. 1000.) Thus, while the trial court begins its review with a presumption of the correctness of the administrative findings, the presumption is rebuttable and may be overcome by the evidence. (*Breslin, supra,* 146 Cal.App.4th at p. 1077.) "When applying the independent judgment test, the trial court may reweigh the evidence and substitute its own findings for those of the [agency], after first giving due respect to the [agency]'s findings." (*Ibid.*) This includes examining the credibility of witnesses. (*Barber, supra,* 45 Cal.App.4th at p. 658 ["[A]n exercise of independent judgment *does* permit (indeed, it requires) the trial court to reweigh the [administrative hearing] evidence by examining the credibility of witnesses."]; see *Levingston, supra,* 38 Cal.App.4th at p. 1000 [trial court independently reviews the administrative record and may reweigh the evidence].)

Our task is to determine whether substantial evidence in the administrative record supports the trial court's ruling (*Bixby, supra,* 4 Cal.3d at p. 143, fn.

10), except when the appellate issue is a pure question of law. The question presented in this case—whether the trial court applied the correct standard of review—is a question of law. We review questions of law de novo. (*Bostean v. Los Angeles Unified School Dist.* (1998) 63 Cal.App.4th 95, 107–108 [73 Cal.Rptr.2d 523].) If the trial court did not apply the correct standard of review, we have no choice but to reverse and remand to allow the trial court to reconsider the case in light of the correct standard. (*Barber, supra,* 45 Cal.App.4th at p. 660.)

Here, the determination the Board had to make, by a preponderance of the evidence, was whether there was substantial evidence of a real and measurable connection between Alberda's disability and his employment. (*Bowen v. Board of Retirement* (1986) 42 Cal.3d 572, 578–579 [229 Cal.Rptr. 814, 724 P.2d 500]; *Glover v. Board of Retirement, supra,* 214 Cal.App.3d at pp. 1336–1337.) In adopting the hearing officer's findings, the Board found there was no real and measurable connection between Alberda's disability and employment. In the trial court, Alberda had the burden of proving the Board's decision was not supported by the weight of the evidence, i.e., the preponderance of the evidence. In carrying out its independent review, the trial court had a duty to weigh the evidence and exercise its independent judgment on the facts, subject to the strong presumption of correctness of the Board's findings. (*Breslin, supra,* 146 Cal.App.4th at p. 1077.) This means the trial court had to consider all the evidence and decide whether Alberda's presentation in the trial court sustained his burden of showing that the weight of the evidence presented by both sides in the administrative hearing was contrary to the Board's finding.

The trial court's written order demonstrated it did not review the Board's decision in the required manner. While the trial court began the statement of decision by stating the correct standard of review, i.e., independent judgment, it went on to say that "substantial evidence supports the hearing officer's decision" that Alberda was not entitled to service-connected disability retirement benefits, that "substantial evidence supports" that the 1995 injury and the 2003 assignment to a smaller squad car did not contribute substantially to Alberda's incapacity, and "[s]ubstantial evidence supports the hearing officer's finding" that Alberda's degenerative problems led to his disability.

In addition, the trial court, before stating that substantial evidence supported the hearing officer's finding, cited to *Wieser v. Board of Retirement, supra,* 152 Cal.App.3d at page 783. There, the appellate court, in discussing whether there was substantial evidence to support the *trial court's* decision that the appellant was not permanently disabled, quoted *Smith v. Workmen's Comp. Appeals Bd., supra,* 71 Cal.2d 588, in which our Supreme Court stated that the board's factual determinations are upheld if substantial evidence

supports them and the opinion of one physician may constitute substantial evidence. (*Wieser, supra*, 152 Cal.App.3d at p. 783.) From this statement of the law, coupled with the trial court's statements throughout the statement of decision that "substantial evidence supports" the hearing officer's decision or findings, it appears likely the trial court applied the substantial evidence standard of review rather than the independent judgment standard.

■ While the Board acknowledges the trial court's use of the term "substantial evidence" in its statement of decision, it contends that this does not mean the trial court did not independently consider the evidence and asserts this "was simply the court's way of saying that 'the weight of the evidence supports the commission's findings of fact' " (quoting *Breslin, supra*, 146 Cal.App.4th at p. 1078). However, the two standards of review, substantial evidence and independent judgment in which the weight of the evidence is considered, are quite different. In substantial evidence review, the reviewing court *defers* to the factual findings made below. It does not weigh the evidence presented by both parties to determine whose position is favored by a preponderance. Instead, it determines whether the evidence the prevailing party presented was substantial—or, as it is often put, whether any rational finder of fact could have made the finding that was made below. If so, the decision must stand. (See, e.g., *Breslin, supra*, 146 Cal.App.4th at p. 1078; *Ryan v. California Interscholastic Federation-San Diego Section* (2001) 94 Cal.App.4th 1048, 1077 [114 Cal.Rptr.2d 798].)

■ In independent review, by contrast, although the trial court begins its review with a presumption that the administrative findings are correct, it does *not* defer to the fact finder below and accept its findings whenever substantial evidence supports them. Instead, it must weigh all the evidence for itself and make its *own* decision about which party's position is supported by a preponderance. (*Fukuda, supra*, 20 Cal.4th at p. 819.) The question is not whether any rational fact finder could make the finding below, but whether the reviewing court believed the finding actually was correct. The bottom-line question for the trial court here was whether Alberda showed that his evidence outweighed the Board's evidence. Unfortunately, to simply conclude "substantial evidence supports" the hearing officer's "decision" or "findings" does not answer this crucial question.

The Board essentially asks us to infer that the trial court simply misspoke when it used the term "substantial evidence." We do not accept this approach where there is a serious question regarding whether the trial court applied the correct standard of review. Instead, we conclude that the language in the trial court's statement of decision requires a remand to ensure the trial court applies the independent judgment standard of review in making its decision.

■ Alberda asks us to independently review the administrative record and reach our own conclusion. This we cannot do, as our review is limited to a determination of whether substantial evidence supports the trial court's findings, which requires us to resolve all conflicts and indulge all reasonable inferences in favor of the prevailing party. (*Barber, supra*, 45 Cal.App.4th at pp. 659–660.) When the trial court has failed to perform its duty, we are unable to perform ours and the matter must be remanded for a new hearing. (*Ibid.*; see *Wences v. City of Los Angeles* (2009) 177 Cal.App.4th 305, 318 [99 Cal.Rptr.3d 199].) In light of this disposition, we do not reach the issue of whether Alberda is entitled to an award of attorney fees. Instead, Alberda may address this issue with the trial court on remand as appropriate.

## DISPOSITION

The order denying the petition for writ of mandate is reversed and the matter remanded to the trial court with directions to reconsider Alberda's petition for writ of mandate under the independent judgment standard of review. Alberda shall recover his costs on appeal.

Cornell, Acting P. J., and Detjen, J., concurred.