Filed 7/5/23  Byron v. County of Tehama CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| WILLIAM C. BYRON et al., | C095205 |
| Plaintiffs and Appellants, | (Super. Ct. No. 20CI000030) |
| v. | |
| COUNTY OF TEHAMA, | |
| Defendant and Respondent. | |

Plaintiffs William C. Byron and Jenny Swaelas Byron (collectively Byrons)[1] appeal the trial court's denial of their petition for writ of administrative mandate seeking to overturn the County of Tehama's (County)[2] imposition of a $30,000 fine against them

---

[1]     Due to the commonality of the plaintiffs' last name, we refer to them by their first names in the opinion where appropriate.  No disrespect is intended.

[2]     Defendant was erroneously sued as the Tehama County Department of Environmental Health, as noted in the trial court's September 9, 2021 order.

1

for permitting a nuisance, in the form of a cannabis cultivation, to exist on their property for 30 days. The fine was imposed after an administrative hearing before a hearing officer appointed by the County. On appeal, the Byrons, representing themselves in propria persona, contend the hearing officer's decision is not supported by the evidence, they were denied due process, and the County's cannabis cultivation ordinance[3] is unconstitutionally vague. We affirm.

## LEGAL BACKGROUND

The ordinance regulates the cultivation of cannabis in the unincorporated territory of Tehama County. The ordinance provides that "[t]he outdoor cultivation of [cannabis], in any amount or quantity, is hereby declared to be unlawful and a public nuisance that may be abated." (§ 9.06.035, subd. (A).) The ordinance further provides that "[n]o person owning . . . any premises within the county shall . . . permit such premises to be used for the outdoor or indoor cultivation of [cannabis] plants in violation of this chapter." (§ 9.06.035, subd. (I).) The ordinance allows "[a]ny owner or occupant [of the property to] abate the unlawful [cannabis] cultivation or cause it to be abated at any time prior to commencement of abatement by, or at the direction of, the enforcing officer. An owner or occupant abating unlawful [cannabis] cultivation hereunder shall notify the enforcing officer upon completion of abatement and shall provide evidence that the unlawful [cannabis] cultivation has been lawfully disposed [of] or lawfully relocated to another premises in compliance with [the ordinance] or outside the county. Abatement

---

[3]      The County refers to the chapter in its municipal code regulating cannabis cultivation as the " 'Tehama County Marijuana Cultivation Ordinance.' " (Tehama County Code, § 9.06.010; undesignated section references are to the Tehama County Code.) We use the term cannabis instead of marijuana because that is the term used by the Medicinal and Adult-Use Cannabis Regulation and Safety Act (see Bus. & Prof. Code, § 26000), and we refer to the Tehama County Marijuana Cultivation Ordinance at issue in this matter as the ordinance throughout this opinion and provide specific references to the county code sections where appropriate.

2

shall not be deemed completed until the unlawful [cannabis] cultivation has been completely removed from the premises and lawfully disposed [of] or relocated, and notification has been provided [to the County]." (§ 9.06.100.) "[A]ny nuisance as described in [the ordinance] may be subject to an administrative penalty of up to one thousand dollars per day." (§ 9.06.165, subd. (A).)

A written notice describing, among other things, the unlawful cultivation and the actions required to abate it must be personally served on the owner and occupant of the property or mailed by overnight mail. (§ 9.06.060, subds. (d)-(e), 9.06.070, subds. (A)-(B).) If such service cannot be accomplished, service shall be accomplished by posting at least two copies of the notice on the frontage of the offending property and where the notice is likely to be seen by the property owner or occupant. (§ 9.06.070, subd. (A)(2).)

A person receiving notice of the existence of a nuisance on their property is entitled to an administrative hearing before a hearing officer appointed by the County. (§ 9.06.085, subd. (C).) The hearing "need not be conducted according to technical rules relating to evidence, witnesses and hearsay. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions." (§ 9.06.080, subd. (I).)

### FACTUAL AND PROCEDURAL BACKGROUND[4]

On September 3, 2019, the County's enforcement officer conducted a flyover of several properties owned by the Byrons. During the flyover, the enforcing officer saw

---

[4]     While the Byrons submitted their own transcript of the administrative hearing and rely on statements appearing only in their transcript when making their appellate arguments, they do not challenge the trial court's exclusion of their transcript or reliance on the administrative record provided by the County. Thus, the Byrons forfeited any contention that their transcript of the administrative hearing should have been considered

3

and took photographs of two areas containing cannabis plants. One area had less than five cannabis plants growing out of what appeared to be a pile of boxes. The other area contained a single dense garden of approximately 100 plants.

On September 9, 2019, the County notified the Byrons that an unlawful outdoor cannabis cultivation existed on their property and constituted a nuisance under the ordinance. To notify the Byrons, according to the enforcement officer, the County "posted the property," overnight mailed the notice to the Byrons, and posted one copy of the notice on the property where the Byrons lived.

The County notified the Byrons they were required to abate the nuisance by September 15, 2019, and that the County would reinspect the property for compliance on September 16, 2019. Specifically, the County informed the Byrons: "THE UNLAWFUL CULTIVATION MUST BE ABATED either through one of the preferred abatement options identified in the attachment or another method as agreed on by the [e]nforcing [o]fficer. THE ENFORCING OFFICER MUST INSPECT THE PROPERTY TO VERIFY THE ABATEMENT. The violation will be presumed to still exist until the [e]nforcing [o]fficer is able to verify lawful abatement." (Boldface omitted.) The notice further informed the Byrons how to notify the County the nuisance had been abated and how to request a reinspection of their property. The notice informed the Byrons a daily administrative penalty would be assessed at $1,000 per day beginning on the reinspection

_____

for failing to argue that point on appeal. We further do not include facts in our factual recitation not considered by the trial court because our review of the trial court's ruling is limited to the evidence it had before it. (*People v. Panah* (2005) 35 Cal.4th 395, 434, fn. 10; *People v. Welch* (1999) 20 Cal.4th 701, 739.) Thus, the statement of facts is compiled from the administrative record provided by the County and relied on by the trial court. Moreover, the audio file provided of the administrative hearing does not substantiate the Byrons' claims of bias on the part of the hearing officer. The County's counsel made a statement following the administrative hearing that is devoid of context, and it is unclear whether the hearing officer was present or knew of the statement when it was made. The statement does not demonstrate bias on the part of the hearing officer or collusion between the County and the hearing officer.

date of September 16, 2019.  "The penalty will continue to accrue until the unlawful [cannabis] cultivation is lawfully abated and the lawful abatement is confirmed by the enforcing officer."  (Capitalization & boldface omitted.)

As an attachment to the notice, the County provided the Byrons with "Preferred Abatement Options."  (Boldface omitted.)  There was, however, only one option provided.  That option was to "[c]ut and leave in place [the cannabis] until re-inspection [was] confirmed by code enforcement."  The attachment further stated, "Burning plant material will be considered destruction of evidence and may be considered an illegal burn.  Burning any public nuisance could result in the inability of the County to determine that the public nuisance has been lawfully abated and may result in a significant increase in fines that may otherwise be imposed."  The County further reprinted the language of the ordinance requiring an owner to provide evidence of lawful disposal or relocation before the abatement would be deemed completed.

On September 16, 2019, the enforcement officer returned to the Byrons' property to reinspect it.  The enforcement officer found some cannabis plants properly abated by having the plants cut and left on the property.  The enforcement officer also saw areas of unlawful abatement of cannabis plants, such that the plants looked as if they had been harvested instead of being disposed of.  Indeed, the plants were not cut and left on the property, but instead a "skid-steer-type vehicle" appeared to have tilled the land and removed the plants.  The enforcement officer found the equivalent of less than one plant's worth of aged leaves and cut stems left on the ground, but no indication of fresh plant particles or cannabis flowers.

The parties proceeded to an administrative hearing on September 18, 2019.  After the presentation of the County's evidence, the Byrons asked for a continuance to consult with legal counsel.  The hearing officer denied the Byrons' motion to continue as untimely.  William then testified that while he owned the property in question, he rented it to a tenant.  After receiving the notice informing him a nuisance in the form of a

5

cannabis cultivation existed on his property, William went to his property and informed the tenant he needed to abate the nuisance. According to William, when he arrived on the property the cannabis garden depicted in one of the photographs had already been removed. He believed this was sufficient because the nuisance, i.e., the cannabis cultivation, no longer existed. Further, while the County informed him of its preferred method of abating the cannabis cultivation, it did not say that it was the only way to abate the nuisance. The County merely precluded burning as a method of abatement. Thus, the Byrons believed they had complied with the County's abatement order.

After explaining their discovery of the nuisance and efforts to abate it, the Byrons read several objections into the record. Relevant to this appeal, they objected to the warrantless search of their property by a helicopter flying lower than 50 feet above their home and introduced a photograph of the helicopter performing the flyover. The hearing officer admitted the photograph, noting it was not probative because she could not tell how close the helicopter was to the ground or when the photograph was taken. The hearing officer excluded the Byrons' proffered flight plan of the helicopter because it was provided through a cell phone application by William without authentication. William cross-examined the enforcement officer about his flight path and whether the Byrons had been singled out by the County when enforcing the ordinance. The hearing officer found the evidence mostly irrelevant because it did not pertain to whether the ordinance had been violated.

The Byrons also objected that their due process rights were being violated because of the County's failure to show them the evidence against them before the hearing and the hearing officer's refusal to permit their counsel to be present. They also objected to the particular hearing officer presiding over the matter "as she is biassed [*sic*] against cannabis, has a conflict of interest, and ha[d] used questionable tactics in her former career as a prosecutor. Referring to the Blake Davidson trial of 2004." The hearing officer reiterated that she denied the Byrons' motion to continue. She further ruled the

6

Byrons did not show she was biased because the case they referenced did not result in any censure from the district attorney's office or the courts—"[n]othing was done wrong."

The hearing officer found that the cannabis cultivation existed on the date of the first inspection and continued to exist to the date of the administrative hearing. In making this determination, the hearing officer pointed to a staff report submitted by the County, statements by the enforcing officer, and photographs of the Byrons' property. The hearing officer further found the amount of an administrative penalty of $1,000 per day was appropriate.

Following the administrative hearing, the Byrons called the County to schedule a reinspection to prove the cannabis had been lawfully disposed of. The County informed the Byrons it could not reinspect their property that day but would call back to schedule a reinspection. The County later called the Byrons back to schedule the reinspection and left a message, but the Byrons never returned the phone call to schedule a reinspection. Based on this evidence, the hearing officer imposed a fine at the $1,000 per day rate from September 16, 2019, to October 15, 2019, equaling $30,000. The 30-day period was the standard period for which to impose a fine in the absence of proof of lawful abatement.

On August 13, 2020, the Byrons filed an amended verified petition for peremptory writ of administrative mandate under Code of Civil Procedure section 1094.5. In their petition, the Byrons requested the trial court to overturn the hearing officer's decision because, among other things, they were denied a fair hearing, and the hearing officer's decision was not supported by substantial evidence. Disagreeing, the trial court denied the Byrons' writ for administrative mandate and entered judgment in favor of the County. The County was later awarded attorney fees in the amount of $36,464.

The Byrons appeal.

DISCUSSION

Code of Civil Procedure section 1094.5 "governs judicial review of adjudicatory decisions by administrative agencies." (*Akella v. Regents of University of California* (2021) 61 Cal.App.5th 801, 813.) The inquiry in such a case extends to whether the respondent to the administrative mandate petition (here, the County) "has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." (Code Civ. Proc., § 1094.5, subd. (b).) An abuse of discretion is established if the respondent agency has failed to proceed "in the manner required by law, the [agency's] order or decision is not supported by the findings, or the findings are not supported by the evidence." (*Ibid*.) Whether the record supports the agency's findings and factual basis for its decision or order is a question of substantial evidence in light of the entire administrative record. (*Id*., subd. (c); *Akella*, at pp. 813-814.) However, to the extent the administrative decision involves a question of law, including the interpretation of statutes and application of judicial precedent, the reviewing court exercises independent judgment. (*Akella*, at p. 815; *McAllister v. California Coastal Com.* (2008) 169 Cal.App.4th 912, 921-922.)[5]

In applying this standard on appeal, "we do not 'undertak[e] a review of the trial court's findings or conclusions. Instead, "we review the matter without reference to the trial court's actions. In mandamus actions, the trial court and appellate court perform the

---

[5]     The Byrons appear to assert that independent judgment should be exercised when reviewing whether the evidence supported the hearing officer's findings. Not so. We exercise independent judgment on the evidence pursuant to Code of Civil Procedure section 1094.5, subdivision (c) only when reviewing an administrative decision that affects a vested, fundamental right, such as retirement benefits. (*Alberda v. Board of Retirement of Fresno County Employees' Retirement Assn.* (2013) 214 Cal.App.4th 426, 433.) That is not the case here where the Byrons point only to their right to be free from encumbrances on the property they own without a mortgage and upon which they run a business.

8

same function." ' " (*Jefferson Street Ventures, LLC v. City of Indio* (2015) 236 Cal.App.4th 1175, 1197.)

Before we delve into the merits of the Byrons' arguments, we note appeals are subject to rules. When an appellant fails to follow those rules, we may deem arguments forfeited. For example, we may deem arguments forfeited when the appellant discusses or raises lurking or tangential arguments without providing proper headings identifying the arguments as issues to be decided on appeal. (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179 ["Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading"]; *Imagistics Internat., Inc. v. Department of General Services* (2007) 150 Cal.App.4th 581, 593, fn. 10 [appellate courts have no duty to respond to improperly headed lurking or tangential arguments].) "We may and [also] do 'disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt.' " (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.) Finally, " ' "[a]rguments should be tailored according to the applicable standard of appellate review." [Citation.] Failure to acknowledge the proper scope of review is a concession of a lack of merit' " (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948), rendering the arguments subject to forfeiture. We deem several of the Byrons' arguments forfeited under the foregoing legal principles, as discussed *post*.

I

*Substantial Evidence Supports The Hearing Officer's*

*Finding That A Nuisance Existed On The Byrons' Property*

The Byrons contend in their first argument that the hearing officer's findings are not supported by the evidence. In their second argument, the Byrons contend the trial court "errored" in judgment. When making their second argument, the Byrons analyze the evidence presented at the administrative hearing and conclude it showed they abated

9

the nuisance. Given the substance of the Byrons' second argument, we consider it an extension of their first argument that the hearing officer's findings are not supported by the evidence.

"In applying [Code of Civil Procedure section 1094.5], we focus on the decision of the [hearing officer] rather than that of the trial court and ' "answer the same key question as the trial court . . . whether the [hearing officer's] findings were based on substantial evidence." ' " (*Colony Cove Properties, LLC v. City of Carson* (2013) 220 Cal.App.4th 840, 866.) "This requires the reviewing court to consider all relevant evidence in the administrative record and view that evidence in the light most favorable to the [hearing officer's] findings, drawing all inferences in support of those findings. [Citation.] The reviewing court does not substitute its own findings and inferences for that of the [hearing officer]. [Citation.] 'Only if no reasonable person could reach the conclusion reached by the [hearing officer], based on the entire record before it, will a court conclude that the [hearing officer's] findings are not supported by substantial evidence.' " (*Akella v. Regents of University of California*, *supra*, 61 Cal.App.5th at p. 814.)

The Byrons' argument that the hearing officer's findings are unsupported by the evidence can be boiled down to two points. First, the Byrons contend the County failed to establish cannabis was cultivated on their property because the photographs failed to show such cultivation and the enforcement officer's testimony was " obviously manufactured to please [the hearing officer] and seriously undependable" given the photographs submitted. Second, the Byrons contend they proved the cannabis cultivation was abated because, upon reinspection by the County after notifying the Byrons of the nuisance, the cannabis cultivation had been removed.

As to the Byron's first argument that the evidence failed to demonstrate cannabis cultivation was present, the enforcement officer testified to his own perceptions of the Byrons' property when flying over it in a helicopter. He said he saw a large cannabis

cultivation consisting of 100 to 125 cannabis plants. The hearing officer found this testimony credible when the hearing officer determined the County had met its burden to show a nuisance existed on the Byrons' property. We must accept the hearing officer's credibility determination and may not disregard it without a clear showing the determination is unreliable. (See *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631 [to overturn the hearing officer's evaluation of credibility, it is not enough to identify contradictions; if any " 'substantial' evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld"].)

The Byrons have not made that showing here. The Byrons assert the hearing officer was feeding the enforcement officer questions to help build the case against them while excluding all of their proffered evidence as hearsay, even though hearsay is permitted at enforcement hearings per the County's municipal code. We agree with the Byrons that the municipal code permits hearsay evidence and that the hearing officer excluded some of their proffered evidence. But the hearing officer is required to weigh the evidence, and whether the evidence is hearsay necessarily informs that decision. (§ 9.06.080, subd. (C).) The hearing officer permitted the Byrons to introduce evidence of the circumstances of their discovery of the nuisance and efforts to abate it. The hearing officer further permitted the Byrons to introduce evidence that they contacted the County to learn how to lawfully dispose of the cannabis. As a whole, the Byrons were permitted to introduce evidence relating to the question before the hearing officer— whether the Byrons violated the ordinance. The enforcement officer also delivered a narrative of his perceptions while flying over the Byrons' property and was not prompted to give answers by the hearing officer. The hearing officer did ask the enforcement officer questions, but not in a way to fill in holes in the County's case. Thus, the hearing officer's evidentiary rulings and questions of the enforcement officer do not undermine her credibility assessment of the enforcement officer.

11

Further, the enforcement officer testified that the photographs depict a large dense grove of plants in the center of tall trees that was later removed by the Byrons' tenant to reveal a large barren garden. Even if the photographs are subject to interpretation and do not definitively demonstrate a large cannabis cultivation, the photographs still serve to support the enforcement officer's testimony that he saw a cannabis cultivation. The enforcement officer also testified he was experienced in both criminal and civil cannabis abatement and had experience identifying cannabis. Taking the photographs and the enforcement officer's testimony together provides substantial evidence the cannabis cultivation, i.e., the nuisance, existed on September 3, 2019. (See *People v. Ghobrial* (2018) 5 Cal.5th 250, 281 [" 'unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction' "].)

This brings us to the Byrons' second contention that the nuisance was abated before the administrative hearing was held. Because the ordinance defines the scope of the nuisance, we look to that definition to determine whether the County has met its burden. (See *Chun v. Del Cid* (2019) 34 Cal.App.5th 806, 815; see also *Bruns v. E-Commerce Exchange, Inc*. (2011) 51 Cal.4th 717, 724 [" 'We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment' "].)

Pursuant to the ordinance, the nuisance exists until the cannabis is lawfully disposed of. On that point, the enforcement officer testified that an unpermitted cannabis cultivation existed on the Byrons' property on September 3, 2019, and upon reinspection of the property on September 16, 2019, the cultivation looked as though it had been harvested instead of disposed of. Remnants left behind in the grove looked like they were a year old and did not amount to the quantity of cannabis plants the enforcement officer saw from the helicopter the week before. The enforcement officer provided photographs of an empty garden sparsely populated with plant trimmings to support his

12

testimony the cultivation had not been lawfully disposed of. This evidence provides substantial evidence the nuisance was ongoing as of September 16, 2019. The facts remained the same as of the continued administrative hearing on October 30, 2019, when the $30,000 fine was imposed on the Byrons.

Accordingly, substantial evidence supports the hearing officer's finding the nuisance was ongoing from September 16, 2019, through October 15, 2019.

II

*The Byrons Were Afforded Due Process*

The Byrons contend their due process rights were violated in several respects. They contend the County did not properly notify them of the nuisance pursuant to the ordinance or provide them with an adequate opportunity to prove lawful disposal. They further contend the hearing officer erroneously denied them representation of counsel and was biased in her evidentiary rulings.

We start with the Byron's challenges against the hearing officer. We have already addressed the Byron's last contention—that the hearing officer was biased—in our discussion of the sufficiency of the evidence. The hearing officer was entitled to consider the source and type of evidence introduced when weighing her credibility and veracity. (§ 9.06.080, subd. (C).) The hearing officer permitted the Byrons to introduce evidence related to their discovery and efforts to dispose of the cannabis cultivation. The evidence the hearing officer excluded pertained to collateral matters unrelated to whether the ordinance was violated. In particular, the flight path of the helicopter that flew over the Byrons' property and whether the enforcement officer also saw cannabis cultivations on their neighbors' properties.

Further, the Byrons' argument that the hearing officer violated their due process rights through her evidentiary rulings is devoid of citations to the record or to relevant legal authority demonstrating the rulings were erroneous, and thus prejudiced them. Thus, this contention is forfeited. (See *Air Couriers Internat. v. Employment*

13

*Development Dept.* (2007) 150 Cal.App.4th 923, 928 [a party's brief must support the argument by appropriate reference to the record; "[w]e have no duty to search the record for evidence and may disregard any factual contention[s] not supported by proper citations"]; see also *People v. Oates* (2004) 32 Cal.4th 1048, 1068, fn. 10 ["Because defendant 'does not expand on the issue with either argument or citation to relevant authority,' we decline to address it"], superseded by statute on another ground as stated in *People v. Tirado* 12 Cal.5th 688, 696.)

Similarly, the Byrons have forfeited their claim the hearing officer erroneously denied them counsel. The Byrons spend much time claiming, without citation to authority, they had a right to be represented by counsel at the administrative hearing. But the hearing officer did not preclude them from being represented. The hearing officer denied them a continuance for the purpose of allowing counsel to appear in the middle of an administrative hearing. The Byrons do not attack the hearing officer's denial of their motion to continue in their opening brief, nor do they cite to any authority demonstrating the denial of their motion constituted a denial of due process. Thus, this issue is also forfeited. (See *People v. Oates*, *supra*, 32 Cal.4th at p. 1068, fn. 10; see also *Raceway Ford Cases* (2016) 2 Cal.5th 161, 178 [we do not address arguments raised for the first time in appellant's reply brief].)

Also forfeited are claims related to the Byrons' allusions to the County's and hearing officer's bias toward cannabis cultivation and claims related to the County's search of the Byrons' property during a flyover. The Byrons fail to cite to any evidence relating to these claims and to relevant authority so that we may analyze these claims. (See *People v. Oates*, *supra*, 32 Cal.4th at p. 1068, fn. 10.) The Byrons also do not raise claims related to the amount of the imposed fines and attorney fees until their reply brief in which they argue the amounts were constitutionally excessive. These claims are forfeited. (*Raceway Ford Cases*, *supra*, 2 Cal.5th at p. 178.)

14

As to the actions of the County, the Byrons' claims of error also lack merit. The Byrons claim the County failed to notify them of the nuisance pursuant to the ordinance because the County failed to post at least two notices of violation on property reasonably likely to give them notice and failed to serve a notice on their tenant who occupied the property. Not so. The enforcement officer testified he posted a notice of violation on the offending property and caused a notice to be overnight delivered to the Byrons' address. He also testified he posted one notice on the property where the Byrons lived. The requirement the Byrons point to regarding duplicate service is necessary to comply with only when the County has failed to notify a property owner pursuant to the previous section of the notice provisions. That section requires the County to deliver the notice of violation personally to the owner of the property or mail it to the non-occupying owner's address and to serve the occupant of the property. (§ 9.06.070, subd. (A).) Thus, the record demonstrates the County complied with the ordinance when notifying the Byrons of the nuisance.

The Byrons were also sufficiently notified of the nature of their violation and the necessary steps required to abate it, contrary to their argument. The notice provided to the Byrons informed them of a cannabis cultivation on their property and required them to lawfully dispose of the cannabis, preferably by cutting down the plants and leaving them for the County to inspect. The Byrons complied with this directive with two plants. Their tenant did not comply with the notice and instead harvested the unpermitted cannabis cultivation. The notice sufficiently informed the Byrons that such harvest constituted unlawful disposal and that the nuisance would not be considered abated under such circumstances. In the end, the Byrons were notified of the conduct the County believed was a violation of the ordinance and given an opportunity to defend against that allegation.

For these reasons, the Byrons' reliance on several cases is misplaced. (Citing *Sunset Amusement Co. v. Board of Police Comm'rs* (1972) 7 Cal.3d 64, 81-82

15

[municipality complied with due process when it failed to renew a business permit based on the business's lack of adequate parking after notifying the business it failed to comply with an ordinance requiring adequate parking], *Smith v. State Bd. of Pharmacy* (1995) 37 Cal.App.4th 229, 241-245 [pharmacy board violated due process by revoking license on theory not disclosed before hearing], *Rosenblit v. Superior Court* (1991) 231 Cal.App.3d 1434, 1445-1447 [hospital violated due process when it alleged a variety of violations related to 30 patients without providing specific allegations as to each patient or permitting the doctor to make copies of patient charts to prepare his defense], *Wheeler v. State Bd. of Forestry* (1983) 144 Cal.App.3d 522, 526-527 [forestry board violated due process by revoking forester's license on theory not alleged in the accusatory pleading], *Stouman v. Munro* (1963) 219 Cal.App.2d 302, 306-307 [alcohol beverage control board complied with due process by revoking license on basis alleged in accusatory pleading].)

III

*The Byrons Have Not Demonstrated The Ordinance Is Unconstitutionally Vague*

In the Byrons last two contentions, they purport to challenge the constitutionality of the ordinance. In their substantive arguments, however, the Byrons rehash many of the contentions they raised throughout their opening brief, including the perceived bias of the hearing officer, the hearing officer's failure to permit them to be represented by counsel, and the sufficiency of the notice provided by the County. We have already addressed these claims and will not do so again.

As to the constitutionality of the ordinance, the Byrons appear to argue the ordinance is devoid of information that would inform them of how to abate the cannabis cultivation after it had been discovered. The only authority cited for the proposition that the ordinance is vague is *Connally v. General Construction Co.* (1926) 269 U.S. 385, 391. In that case, the Supreme Court stated, "That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what

16

conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." (*Ibid*.)

The ordinance clearly provides that an unpermitted cannabis cultivation is a nuisance and, for the County to consider the nuisance abated, the landowner must provide evidence that the cannabis cultivation was lawfully disposed of or moved. The Byrons do not assert why those provisions are vague, except to argue that, in practice, the County requires only that a landowner perform the preferred method of abatement, i.e., cut the cannabis plants and leave them in place for reinspection. According to the Byrons, this language should be included in the ordinance, and because the ordinance does not include this language, it is an underground regulation. As an example, the Byrons point to their own case and argue the County would have been satisfied only if they had complied with the County's preferred abatement option, when, in reality, they complied with the ordinance by lawfully disposing of the cannabis when their tenant mowed over the cultivation and the cannabis was buried under ground.

We disagree. As described by the enforcement officer, the cannabis on the Byrons' property was not disposed of or buried, as the Byrons assert, but was instead harvested. If the evidence in fact demonstrated the cannabis had been disposed of by mowing it over and leaving it under ground, then the County may have accepted that the cannabis had been lawfully disposed of per the language of the ordinance. But there is no evidence to support the Byrons' contention of lawful disposal, and there is nothing in the record demonstrating the County would have rejected that method of disposal. For these reasons, the Byrons have not demonstrated the ordinance is unconstitutionally vague.

17

## DISPOSITION

The judgment is affirmed.  The County is awarded its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1)-(2).)


        /s/
        ROBIE, Acting P. J.


We concur:


/s/
HULL, J.


/s/
HORST, J.*

---

\*     Judge of the Placer County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.