Filed 7/17/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JOSAFAT RODRIGUEZ, JR.,<br><br>   Plaintiff and Appellant,<br><br>   v.<br><br>CITY OF SANTA CRUZ et al.,<br><br>   Defendants and Respondents. | H038973<br>(Santa Cruz County<br> Super. Ct. No. CV173783) |

Petitioner Josafat Rodriguez, Jr., a former Santa Cruz police officer, applied to the City of Santa Cruz (the City) for industrial disability retirement, alleging psychiatric disability due to posttraumatic stress disorder (PTSD). The City denied Rodriguez's application. Rodriguez challenged that denial by means of a petition for a writ of administrative mandate, which the superior court denied. On appeal from that denial Rodriguez claims, among other things, that the trial court applied the incorrect standard of review. We agree and therefore shall reverse the order denying the petition and remand the case to the trial court.

I.   **BACKGROUND**

   A.   *Factual Background*

      1.   *Rodriguez's Military Service*

Rodriguez joined the Marine Corps in 1989, immediately after graduating from high school. He served in the first gulf war as the demolition specialist in a five-man infantry fire team. He and his team patrolled the border between Saudi Arabia and Kuwait for approximately six months. A mortar attack killed three of his team members and injured the fourth. Following the attack, Rodriguez and another fire team had the

gruesome task of collecting the slain marines' bodies. Rodriguez also was involved in multiple fire fights and battles during the conflict. He was discharged from the Marines in 1993.

### 2. Employment with the Santa Cruz Police Department

Rodriguez joined the Santa Cruz Police Department in 1995 and became a member of the Santa Cruz County Narcotics Enforcement Team in 1998. As a part of that team, he performed dangerous undercover work. Rodriguez received positive performance evaluations in 1997, 1998, and 1999.

On January 6, 2000, Rodriguez fell during a nighttime raid, injuring his back and leg. He was unable to work for approximately one year as a result of the injury. When Rodriguez returned to work, he did so as a police station duty officer because his injury prevented him from doing field work. Rodriguez held that position until going on leave for back surgery in November 2005. During at least some portion of his time as a police station duty officer, Rodriguez worked as a detective in the investigations unit, which involved conducting interviews and reviewing crime scene photographs.

In July 2006, after Rodriguez's doctor cleared him to return to work following back surgery, the Santa Cruz Police Department again offered Rodriguez the position of police station duty officer. Rodriguez rejected the offer in August 2006, saying he was physically unable to perform the job due to continuing pain and his pain medications. At about the same time, Rodriguez filed an application for industrial disability retirement on the basis of disability affecting his back, hands, and wrist.[1]

Rodriguez returned to work for two weeks in late March and early April 2007 after being ordered to do so or face termination. During that time, he repeatedly asked to go home due to back pain. Rodriguez stopped showing up for work and was again warned that he faced termination. On June 7, 2007, Rodriguez resigned for "health reasons."

---

[1] That application was denied in February 2008.

### 3. *Second Industrial Disability Retirement Application for PTSD*

Rodriguez filed a second application for industrial disability retirement three years later, claiming a psychological disability caused by PTSD. At the October 2011 administrative hearing on that application, Rodriguez testified that he first experienced PTSD symptoms--specifically nightmares about his combat experiences--early in his career with the police department. He did not tell anyone about the dreams, instead drinking to fall asleep. Rodriguez testified that he had flashbacks to the war, in addition to nightmares, while working as a police station duty officer. Although he never discussed these issues with his wife, they ruined his marriage and he got divorced.

According to Rodriguez, it was not until he spoke with a counselor at a Veterans' Affairs clinic in 2007 that he first learned about PTSD and began to understand his symptoms. He now attributes his inability to return to work in 2006 and 2007, not to his back pain, but to his PTSD. Rodriguez testified that he now avoids his PTSD triggers, which include sirens and police uniforms, but has not yet sought treatment for the disorder.

Rodriguez also testified as to his activities outside of police work over the past decade. These included getting his real estate license sometime between 2000 and 2002, affiliating with a broker, and leading a team of real estate agents. Rodriguez earned $95,000 from real estate work in 2005 and $24,000 in 2006. He testified that he had not sold any real estate since 2007, but acknowledged that his license remains valid until 2015. Rodriguez also stated that he purchased between five and 10 investment properties while he was selling real estate, which he rented out and managed.

Rodriguez testified that he helped found a volunteer nonprofit organization called the Central Coast Gang Investigator Association sometime prior to 2001. In February 2011, the group's Web site identified Rodriguez as a member of its advisory council, but he testified that he had not been involved with the group since 2006 or 2007.

Between 2004 and 2007, Rodriguez formed two corporations and a family trust. He testified that he had no memory of doing so.

In 2009 or 2010, Rodriguez started his own private investigation business after passing a state license exam.

Rodriguez also testified that he had remarried and had a baby with his second wife.

### 4.    *Medical Evidence Presented at the 2011 Disability Hearing*

Reports from six medical professionals were admitted at the administrative hearing.

#### *Marsha Malis*, *Ph.D.*

Marsha Malis, Ph.D., a marriage family therapist who treated Rodriguez for an unspecified duration, stated in a January 2008 report that Rodriguez "exhibits signs of anxiety, depression, fear and pain over the issues related to continued police work." Dr. Malis attributed that anxiety to Rodriguez's physical pain and his resulting inability to perform his job duties. She made no mention of PTSD.

#### *Peter Berman*, *Ph.D.*

Peter Berman, Ph.D., of the Department of Veterans' Affairs, diagnosed Rodriguez with PTSD on February 21, 2008, following a PTSD evaluation the day prior. According to the report, Rodriguez was working as an event planner at the time. Dr. Berman conducted a review examination on August 28, 2008, after which he concluded that Rodriguez's PTSD symptoms had worsened.

#### *Carla Galloway*, *M.D.*

Carla Galloway, M.D., also affiliated with the Department of Veterans' Affairs, conducted another PTSD review examination of Rodriguez on December 7, 2009. Dr. Galloway determined Rodriguez was not "capable of substantially gainful employment at the present time without further treatment."

4

*James Bryant*, Ph.D.

James Bryant, Ph.D., a clinical psychologist, performed psychological tests on Rodriguez at the request of Mark A. Snyder, M.D., who was retained by the City in connection with Rodriguez's second disability retirement claim. Dr. Bryant reported the results of the various tests he administered and diagnosed Rodriguez with PTSD and generalized anxiety disorder.

*Trent E. Cornell*, Ph.D.

Trent E. Cornell, Ph.D., a clinical psychologist retained by Rodriguez, diagnosed Rodriguez with PTSD in a report dated September 13, 2011. Dr. Cornell based that diagnosis on two hour-long sessions with Rodriguez, a conversation with Dr. Malis, Dr. Berman's reports, Dr. Galloway's report, documents from the Santa Cruz Police Department, and the results of Dr. Bryant's psychological testing. Dr. Cornell opined that Rodriguez's PTSD was exacerbated by his police work, particularly his work in narcotics enforcement, which involved dangers reminiscent of those he faced in combat.

In a second report dated October 5, 2011, Dr. Cornell opined that Rodriguez was substantially incapacitated from performing the duties of police station duty officer at the time he resigned and remained so, as "any form of 'police work' would intensify his [PTSD] symptomatology."

*Mark A. Snyder*, M.D.

Mark A. Snyder, M.D., interviewed Rodriguez for two-and-a-half hours in June 2011. He also reviewed Dr. Bryant's psychological test results, records from the Santa Cruz Police Department and the Department of Veterans' Affairs, and various medical records. In his first report, dated September 6, 2011, Dr. Snyder diagnosed Rodriguez with PTSD. Dr. Snyder explained that he had requested psychological testing because he had concerns about Rodriguez's credibility, given Rodriguez's failure to disclose his PTSD symptoms to the police department, his family, or Dr. Malis. Dr. Snyder also noted that "significantly delayed onset of . . . Post Traumatic Stress Disorder," as

described by Rodriguez, is "infrequent." Nevertheless, Dr. Snyder concluded that Rodriguez's failure to report his symptoms was consistent with the psychological test results, which indicated Rodriguez was in denial about his psychological problems. Dr. Snyder further stated that the psychological testing indicated Rodriguez was not fabricating or magnifying his symptoms. According to Dr. Snyder, the PTSD "was a consequence of [Rodriguez's] experiences in the Police Department and his experiences in the Marine Corps," and the disorder was "awakened" from a "repressed" state by life threatening police work. Dr. Snyder also diagnosed Rodriguez with panic disorder without agoraphobia, generalized anxiety disorder, and a personality disorder. Dr. Snyder concluded that Rodriguez "is substantially incapacitated and unable to perform . . . the duties of a Police Station Duty Officer because even such an environment provides a sufficient number of cues that provoke memories of disturbing events and stimulate [Rodriguez] to develop anxiety."

The City asked Dr. Snyder to reconsider his findings based on additional documents. In particular, the City provided Dr. Snyder with the administrative law judge's (ALJ) proposed decision denying Rodriguez's first petition for disability retirement and a printout from the Central Coast Gang Investigator Association Web site listing Rodriguez as a member of its advisory council. In his second report, dated September 28, 2011, Dr. Snyder concluded Rodriguez was not credible. In support of that conclusion, Dr. Snyder noted that Rodriguez had not disclosed his real estate work, the corporation he had formed (which Dr. Snyder characterized as "a second job"), or his role with the Central Coast Gang Investigator Association. Dr. Snyder also pointed to Rodriguez's failure to inform the police department about his psychological problems, inconsistencies between what Rodriguez told physicians and his deposition testimony, and Rodriguez's uncooperative behavior toward the police department immediately preceding his resignation. "[O]n the basis of [Rodriguez's] lack of credibility coupled with the fact that, while claiming disability, he [was] able to work as a real estate agent,

6

start a corporation, [and] be on the board of a community organization," Dr. Snyder concluded Rodriguez was not substantially incapacitated from performing the duties of police station duty officer.

## B. *Procedural Background*

### 1. *December 13, 2011 ALJ Decision*

In a 13-page decision, the ALJ concluded that Rodriguez failed to establish that he is permanently incapacitated from performing the duties of a police station duty officer. According to the ALJ, the position of police station duty officer includes the following duties: "answering the telephone, scheduling meetings and hearings, . . . acting as a hearing officer, and signing fix-it tickets." The ALJ did not doubt the accuracy of Rodriguez's PTSD diagnosis. However, she concluded that Rodriguez nevertheless could perform the requisite duties based on evidence that "he was able to return home, be successfully employed as a police officer for many years, obtain a real estate salesperson license, engage in the real estate business, start another business, manage properties, perform many volunteer activities, and . . . establish his own, albeit new, business as a private investigator, after taking and passing a licensure examination." The ALJ stated that Rodriguez's "lack of memory (not shown to be a symptom of or attributable to PTSD) of his activities outside his police work and his failure to provide all the relevant facts and information to the medical professionals examining him negatively affected his credibility."

The City adopted the ALJ's decision on January 12, 2012.

### 2. *Petition for Writ of Administrative Mandate*

Rodriguez filed a petition for a writ of mandate to set aside the City's determination. The trial court heard the petition on August 8, 2012, and took the matter under submission. On August 27, 2012, the court issued its statement of decision denying the petition. The trial court identified the standard of review as independent judgment review "to determine whether the finding of the Administrative Law Judge is

7

supported by the weight of the evidence." The court stated that the ALJ's decision was entitled to the " 'deference and respect due a judicial decision,' " citing *Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 (*Strumsky*). After describing the medical reports it had reviewed, the trial court concluded that, "[w]hile there appears to be no reasonable doubt that the Petitioner suffers from psychiatric disorders, there is sufficient evidence for the Administrative Law Judge to find that the Petitioner lacked credibility, based upon the fact that the Petitioner worked while allegedly disabled, and to conclude that he was not incapacitated from working as a Police Station Duty Officer." The court went on to state that "[t]he weight of the evidence . . . does not establish that the petitioner was substantially incapacitated from performing his duties of employment." Accordingly, the superior court denied Rodriguez's petition for a writ of mandate.

Rodriguez filed a notice of appeal on October 25, 2012. The trial court entered judgment in favor of the City on December 26, 2012. While Rodriguez's notice of appeal was premature, pursuant to rule 8.104(d)(2) of the California Rules of Court, we treat the notice of appeal "as filed immediately after entry of judgment," and consider it to be timely.

## II.  DISCUSSION

### A.  *Governing Law*

The Public Employees' Retirement Law (Gov. Code, § 20000 et seq.) makes certain public employees, including police officers, eligible for special disability retirement benefits if they are "incapacitated for the performance of duty as the result of an industrial disability." (Gov. Code, § 21151, subd. (a); see also *Pearl v. Workers' Comp. Appeals Bd.* (2001) 26 Cal.4th 189, 193.) Courts have construed " 'incapacitated for the performance of duty' " to mean "the *substantial* inability of the applicant to perform his usual duties." (*Mansperger v. Public Employees' Retirement System* (1970)

8

6 Cal.App.3d 873, 876.)  The statute applies to both physical and mental disability. (Gov. Code, § 21156.)

When a trial court reviews an administrative determination by writ of administrative mandate, the appropriate standard of review depends on both the type of the agency rendering the decision and the nature of the right involved.  Decisions issued by "agencies of constitutional origin which have been granted limited judicial power by the Constitution itself" (*Strumsky*, *supra*, 11 Cal.3d at p. 35) are "entitled to all the deference and respect due a judicial decision."  (*Id.* at p. 36.)  Their "findings of fact are reviewable in an administrative mandamus proceeding under the substantial evidence test."  (*Gonzalez v. State Personnel Bd.* (1995) 33 Cal.App.4th 422, 428.)  The deferential substantial evidence standard of review applies regardless of the nature of the right at issue.  (*Strumsky*, *supra*, at p. 36.)  By contrast, if the administrative decision maker is a local agency, the substantial evidence standard of review applies only if "the administrative decision neither involves nor substantially affects a fundamental vested right."  (*Wences v. City of Los Angeles* (2009) 177 Cal.App.4th 305, 313 (*Wences*).)  If a fundamental vested right is involved, the trial court "must exercise its independent judgment on the evidence and find an abuse of discretion if the findings are not supported by the weight of the evidence."  (*Strumsky*, *supra*, at p. 44.)

"In exercising its independent judgment, a trial court must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence."  (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817 (*Fukuda*).)  However, the court also has the "responsibility to weigh the evidence at the administrative hearing and to make its own determination of the credibility of witnesses."  (*Guymon v. Board of Accountancy* (1976) 55 Cal.App.3d 1010, 1016.)

In reviewing the trial court's denial of the petition for a writ of administrative mandate, we apply the substantial evidence test to the trial court's factual findings. (*Antelope Valley Press v. Poizner* (2008) 162 Cal.App.4th 839, 851.) In doing so, we " 'resolve all conflicts and indulge all reasonable inferences in favor of the party who prevailed in the trial court.' " (*Worthington v. Davi* (2012) 208 Cal.App.4th 263, 277.) We review questions of law, including whether the trial court applied the correct standard of review, de novo. (*Alberda v. Board of Retirement of Fresno County Employees' Retirement Assn.* (2013) 214 Cal.App.4th 426, 434 (*Alberda*).)

### B. The Trial Court Applied the Incorrect Standard of Review

Here, the trial court was required to use its independent judgment in reviewing the decision of a local agency (the City) involving Rodriguez's "fundamental vested right to a disability retirement pension if he in fact was disabled." (*Quintana v. Board of Administration* (1976) 54 Cal.App.3d 1018, 1023.) While the parties agree that the independent judgment standard applied below, they dispute whether the court in fact employed that standard.

Rodriguez argues the trial court failed to independently assess his credibility, and instead deferred to the ALJ's finding that Rodriguez's "lack of memory . . . and his failure to provide all the relevant facts and information to the medical professionals examining him negatively affected his credibility." Rodriguez bases his argument in part on the trial court's two references to its understanding that, under *Strumsky*, the ALJ's decision was entitled to the " 'deference and respect due a judicial decision.' " As discussed above, *Strumsky* holds that only the factual determinations of constitutional agencies are entitled to such deference, which is accorded by way of the substantial evidence standard of review. (*Strumsky*, *supra*, 11 Cal.3d at p. 36; see also *Alberda*, *supra*, 214 Cal.App.4th at p. 435 ["In substantial evidence review, the reviewing court *defers* to the factual findings made below."].) "In independent review, . . . although the trial court begins its review with a presumption that the administrative findings are

10

correct, it does *not* defer to the fact finder below and accept its findings whenever substantial evidence supports them." (*Alberda*, *supra*, at p. 435.) Rodriguez also relies on the trial court's statement that "there is sufficient evidence for the Administrative Law Judge to find that the Petitioner lacked credibility, based upon the fact that the Petitioner worked while allegedly disabled, and to conclude that he was not incapacitated from working as a Police Station Duty Officer." According to Rodriguez, the court's use of the phrase "sufficient evidence" shows that it applied the incorrect substantial evidence test to affirm the ALJ's finding that Rodriguez was not credible. We agree that the court's choice of words suggests a substantial evidence review. (See *Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1188 ["When a party contends insufficient evidence supports a jury verdict, we apply the substantial evidence standard of review."].)

In response, the City notes that the trial court's statement of decision identified the correct independent judgment standard of review and that the trial court was required to work from the presumption that the ALJ's decision was correct.

The Fifth District recently considered a similarly ambiguous statement of decision in which "the trial court began . . . by stating the correct standard of review, i.e., independent judgment, [but] went on to say that 'substantial evidence supports the hearing officer's' " findings and decision. (*Alberda*, *supra*, 214 Cal.App.4th at p. 434.) There, the trial court also cited to a case setting forth the incorrect substantial evidence standard. Based on that citation, "coupled with the trial court's statements throughout the statement of decision that 'substantial evidence supports' the hearing officer's decision or findings," the Fifth District concluded it was "likely the trial court applied the substantial evidence standard of review rather than the independent judgment standard." (*Id*. at p. 435.) In reaching that decision, the court noted that the independent judgment and substantial evidence standards of review "are quite different." (*Ibid*.) In particular, substantial evidence review requires deference to the factual findings made below and

11

permits no weighing of the evidence, whereas independent judgment review requires weighing of the evidence and involves no deference to the factfinder below. (*Ibid*.)

This is a closer case than was *Alberda*. There, the court stated that "substantial evidence" supported the administrative decision on at least three different occasions, and cited a case applying that erroneous standard. (*Alberda*, *supra*, 214 Cal.App.4th at p. 434.) Here, there is only one reference to "sufficient evidence," which is unaccompanied by any case citation to indicate what standard the trial court intended to apply. Nevertheless, the statement of decision leaves us with the distinct impression that the trial court likely did not apply the independent judgment standard in making its decision, and particularly in assessing Rodriguez's credibility. We reach that conclusion based on the fact that each time the court referenced the correct independent judgment standard, it also incorrectly stated that the ALJ's decision was entitled to "deference." As the *Alberda* court explained, the notion of deference has no place in the independent judgment standard.[2] Moreover, the trial court articulated no independent finding regarding Rodriguez's credibility, stating only that there is sufficient evidence to support *the ALJ's finding* that he lacked credibility. The court then went on to state "[t]he weight of the

---

[2] Of course, the trial court was required to afford a strong presumption of correctness to the ALJ's findings. (*Fukuda*, *supra*, 20 Cal.4th at p. 819.) But from that starting point it was required to "exercise independent judgment in making its own findings," rather than defer to the ALJ's findings. (*Ibid*.) Nor is the ALJ's credibility determination entitled deference under Government Code section 11425.50, subdivision (b), which requires trial courts to accord "great weight" to an agency's credibility determination "to the extent the determination identifies the observed demeanor, manner, or attitude of the witness that supports it." Here, the ALJ did not identify any evidence of demeanor, manner, or attitude supporting its conclusion that Rodriguez was not credible. (See *Patterson Flying Service v. Department of Pesticide Regulation* (2008) 161 Cal.App.4th 411, 430 [credibility determination not entitled to "the 'great weight' prescribed by [Government Code] section 11425.50, subdivision (b)" where hearing officer cited no "evidence of demeanor, manner, or attitude supporting [its] conclusion"]; *California Youth Authority v. State Personnel Bd.* (2002) 104 Cal.App.4th 575, 596 [same].)

12

evidence . . . does not establish that the petitioner was substantially incapacitated from performing his duties of employment," indicating it properly reweighed the evidence. But the court's discussion of Rodriguez's credibility suggests that, in reweighing the evidence, it may have disregarded Rodriguez's testimony based solely on the ALJ's credibility finding.

The City argues that even if the trial court applied the wrong standard of review, reversal and remand are not required. For that argument, the City relies on *Malibu Mountains Recreation, Inc. v. County of Los Angeles* (1998) 67 Cal.App.4th 359. There, the Court of Appeal concluded that the trial court's erroneous use of the substantial evidence standard in place of the independent judgment standard did not require reversal because the statement of decision demonstrated the trial judge had examined and weighed all the losing party's evidence and arguments, so that "there is no probability of a different result on remand." (*Id.* at p. 373.) That is not the case here. As discussed above, it is not clear from the trial court's statement of decision whether it accorded any weight to Rodriguez's testimony. And we cannot say that there is no probability of a different result on remand: if the trial court in fact deferred to the ALJ's credibility finding, on remand its own independent judgment may lead it to credit that testimony, which could alter its weight of the evidence calculus.

Because "the trial court has failed to perform its duty, we are unable to perform ours and the matter must be remanded for a new hearing." (*Alberda*, *supra*, 214 Cal.App.4th at p. 436; see also *Wences*, *supra*, 177 Cal.App.4th at p. 318.) In light of this disposition, we do not reach the other issues Rodriguez raises.

## III.   DISPOSITION

The order denying the petition for writ of mandate is reversed and the matter is remanded to the trial court with directions to reconsider Rodriguez's petition for writ of mandate under the independent judgment standard of review. Rodriguez shall recover his costs on appeal.

13

_____
                                         Premo, J.

WE CONCUR:


_____
        Rushing, P.J.


_____
        Elia, J.


Rodriguez v. City of Santa Cruz et al.
H038973

| Trial Court: | Santa Cruz County Superior Court<br>Superior Court No. CV173783 |
|---|---|
| Trial Judge: | Hon. Timothy R. Volkmann |
| Counsel for Plaintiff/Appellant:<br>Josafat Rodriguez, Jr. | Scott Shaffman<br><br>Mazur & Mazur<br>Janice R. Mazur |
| Counsel for Defendant/Respondent:<br>City of Santa Cruz,<br>City Santa Cruz City Manager | Witzig, Hannah, Sanders & Reagan<br>William L. Reagan |

Rodriguez v. City of Santa Cruz et al.
H038973